UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LANCE BERKOWITZ,

                          Plaintiff,

- against -

AMELIA US, LLC d/b/a AMELIA AI and
SOUNDHOUND AI,

                          Defendants.
-----------------------------------------------------------X

Civil Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, LANCE BERKOWITZ ("Plaintiff" or "Mr. Berkowitz"), by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against AMELIA US, LLC d/b/a AMELIA AI ("Amelia") and **SOUNDHOUND AI**, ("SoundHound") (collectively "DEFENDANTS" or the "Company") alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1. This action seeks monetary damages, declaratory, and equitable relief, to redress Defendants' unlawful employment practices against Plaintiff, including: (i) failure to pay wages and unlawful deductions in violation of New York Labor Law §§ 190-198 ("NYLL"); (ii) breach of contract; and (iii) quantum meruit.

**PRELIMINARY STATEMENT**

2. This action arises from the unlawful conduct of Defendants in failing to compensate Plaintiff for earned wages, including non-discretionary performance-based bonuses and commissions, in violation of the NYLL and common law.

3. Plaintiff was employed by Defendants as Senior Vice President under a written agreement that guaranteed a base salary and non-discretionary performance-based bonus. Despite

1

his exemplary performance, including the successful negotiation of a major contract and recognition from his peers and superiors, Defendants wrongfully withheld Plaintiff's earned bonus and commission.

4. Further, Defendants unlawfully deducted these earned wages by refusing to pay Plaintiff the amounts owed. Plaintiff brings this action seeking monetary damages, declaratory, and equitable relief for the Defendants' violations of the NYLL, as well as for breach of contract and, in the alternative, quantum meruit. Plaintiff seeks to recover the unpaid wages, liquidated damages, interest, and reasonable attorneys' fees, in addition to any other relief the Court deems just and proper.

## JURY DEMAND

5. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues that are triable in this action.

## PARTIES

6. At all times relevant hereto, Plaintiff is a citizen of Massachusetts.

7. Upon information and belief, Defendant AMELIA US LLC d/b/a AMELIA AI is a Delaware corporation, with its principal place of business in New York, New York.

8. Upon information and belief, Defendant SOUNDHOUND AI is a California corporation, with its principal place of business in Santa Clara, California.

9. On or about August 8, 2024, Defendant SoundHound acquired Amelia, a conversational Artificial Intelligence business.[1]

10. Plaintiff worked for Amelia prior to its acquisition by SoundHound in Amelia's

---

[1] https://www.soundhound.com/newsroom/press-releases/soundhound-ai-acquires-amelia-significantly-expanding-its-scale-and-reach-in-conversational-ai-across-new-verticals-and-hundreds-of-enterprise-brands, last accessed December 9, 2024

New York Office.

11. Amelia has its headquarters in New York, New York and with principal business offices located in the County of New York, State of New York.

12. Plaintiff is an individual who performed work for Defendants within the State of New York and is an "Employee" within the meaning of the NYLL.

13. At all times relevant, Defendants Amelia and SoundHound operated as a single integrated employer and/or joint employer of Plaintiff.

14. Specifically, Defendants employ(ed) and or jointly-employ(ed) Plaintiff under the NYLL in that Defendants share a common business purpose and ownership, maintain common control, oversight and direction over the operations of work performed by Plaintiff, including employment practices. Defendants share the same or similar overlapping workforce, jointly shared responsibility for, among other things, the hiring and firing of its workforce and staff, and share in the responsibilities of setting and establishing their workers' rates of pay, paying workers their wages, setting their hours and work schedules, and supervising their job duties performed for the Defendants.

15. At all relevant times, each Defendant was and is an "Employer" within the meaning of the NYLL.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(l) and (2), since there is complete diversity amongst the parties and the amount in controversy exceeds the sum of $75,000.00.

17. This matter is properly venued in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to the claim occurred within the District.

## FACTUAL ALLEGATIONS

**Mr. Berkowitz Is Hired by Amelia, With the Promise of a Substantial Individual Performance-Based Bonus.**

18. On August 31, 2023, Mr. Berkowitz was hired by Defendant Amelia, as Senior Vice President. His employment was formalized through a fully executed employment agreement (the "Employment Agreement" annexed hereto as Ex. A), which outlined an annual salary of $260,000, and eligibility for a non-discretionary annual bonus based on individual and company performance.

19. The Employment Agreement also provided for a significant bonus opportunity, specifically, an individual performance-based bonus of $185,000. Amelia's President confirmed this bonus in an email to Mr. Berkowitz on August 24, 2023, stating, "I'd like to make your base $250K and your bonus potential $185K." (Ex. B).

20. Throughout his employment, Mr. Berkowitz proactively sought to establish clear performance metrics for his bonus, proposing targets for net retention rate and contract expansion.

21. For example, Mr. Berkowitz, in an email dated August 22, 2023, proposed a performance-based structure, stating, "I propose a base salary of $275,000, **with variable compensation of $185,000.00**. This variable portion would be linked to **specific performance metrics**, including but not limited to net retention rate, expansion, and extension of existing contracts." (Ex. C) (emphasis added).

22. Mr. Berkowitz had even suggested incorporating accelerators for overachievement, in an email dated, August 22, 2023, stating, "Assuming our current rate stands at 70%, and our

mutual target is an improvement to 80%, any achievement beyond this target, such as reaching 90%, would be considered overachieving. In such cases, I suggest incorporating accelerators into the compensation structure to reward this performance." (Id.).

23. Defendants acknowledged Plaintiff's proposal, responding, "We are in synch regarding incentive structure and linking directly to **delivery performance**." (Ex. B).

**Mr. Berkowitz Excels in His Role.**

24. Throughout his tenure, Mr. Berkowitz consistently exceeded performance expectations. One of his most significant achievements was closing a $2 million renewal deal with NICE, a key client, on June 26, 2024. In addition, he successfully established the NICE Enablement Program, which involved training eleven NICE developers on the Amelia platform.

25. This program enabled NICE to independently deliver solutions to its own customers. Moreover, Mr. Berkowitz overcame numerous internal and external challenges, including frequent leadership changes and a strained relationship with the client, all while maintaining high performance and securing valuable business.

26. Mr. Berkowitz's adept handling of these challenges not only secured the lucrative deal, but also salvaged Amelia's reputation with a critical client. He re-established credibility with NICE by smoothing over discussions and successfully managing a high-stakes dinner meeting with Ofir Yaron, Vice President, Head of M&A at NICE, in New York City on June 19, 2024.

27. To be clear, in an email June 13, 2024, Ofir Yaron calls Plaintiff the current "leader" for the deal that had been dragging on for 3.5 months. (Ex. D, Email dated June 13, 2024).

28. Despite these accomplishments, Mr. Berkowitz's contributions were often undervalued and undercompensated by the Defendants, particularly with regard to the promised bonus.

**Mr. Berkowitz is Abruptly Terminated After Amelia is Acquired by SoundHound.**

29. On Monday, April 29, 2024, Mr. Berkowitz received communication from Amelia in which he was informed that he should begin seeking alternative employment. Subsequently, on May 7, 2024, Mr. Berkowitz's employment was formally terminated, with his last day set for July 1, 2024, pursuant to the terms outlined in the separation agreement.

30. However, Mr. Berkowitz was assured that if the Series B investment—tied to Bobby Srinivasan—did not proceed, Mr. Berkowitz would be reinstated. As the Series B investment did not materialize, Mr. Berkowitz was reinstated. On June 24, 2024, Mr. Berkowitz executed a Mutual Rescission of Separation and Release Agreement, effectively reinstating his employment with Defendants.

31. On August 8, 2024 Amelia was acquired by Soundhound. Immediately thereafter, in an e-mail dated August 9, 2024, Keyvan Mohajer, CEO of SoundHound, recognized Mr. Berkowitz's consistent performance and leadership skills, praising him as "one of the gems and great leaders of this organization." (Ex. E). Furthermore, Amelia's President recommended Mr. Berkowitz to SoundHound to run their new division, highlighting his potential for greater responsibility.

32. However, Mr. Berkowitz's employment was terminated on August 21, 2024. This termination came a complete shock to Mr. Berkowitz. However, one thing is clear, the termination had nothing to do with Mr. Berkowitz's performance. The email from Keyvan Mohajer praising Mr. Berkowitz, just weeks before the termination, further bolsters this assertion.

**SoundHound's Failure to Pay Mr. Berkowitz His Performance-Based Bonus.**

33. Despite Mr. Berkowitz's exceptional performance and the delivery of key milestones, including salvaging the critical NICE renewal, defendant failed to pay the agreed-upon

6

$185,000.00 bonus, or any bonus whatsoever, which was an essential part of Plaintiff's compensation package.

34.     Mr. Berkowitz formally requested payment of the bonus after his termination, but defendants failed to respond to this request or honor its contractual obligation to pay him the bonus.

**SoundHound's Failure to Pay Mr. Berkowitz the NICE Commission.**

35.     Mr. Berkowitz played a pivotal role in securing the $2 Million renewal deal with NICE. He was specifically tasked with leading the negotiations for this renewal, as confirmed by Ofir Yaron on June 13, 2024.

36.     Based on his role in the renewal, Mr. Berkowitz was entitled to a 5% commission on the deal value, amounting to $100,000.00, which would be commensurate with similarly situated employees. However, Amelia failed to pay Mr. Berkowitz the commission despite his direct involvement in closing the deal.

**37.**     The failure to pay this commission constitutes a violation of New York Labor Law Section 191(1)(c), which requires the timely payment of earned commissions.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Wages/Unlawful Deductions Under the NYLL)

38.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

39.     NYLL § 193 prohibits employers from making any deduction from an employee's wages, outside of certain limited enumerated circumstances.

40.     As described above, Defendants were, at all relevant times, Plaintiff's employer and/or joint employer within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

41. As further outlined, Defendants deducted from Plaintiff's earned wages by refusing to pay him the full amount of his non-discretionary performance-based bonus and commission, despite his entitled compensation being clearly outlined in his Employment Agreement.

42. As a result of Defendants' unlawful failure to pay Plaintiff his earned bonus and commission, Defendants are liable to Plaintiff for the amounts of the unpaid wages.

43. Plaintiff is entitled to liquidated damages, interest, and attorneys' fees as provided under the NYLL for Defendants' violation of the unlawful deduction provisions.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Breach of Contract)

44. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

45. As described above, Plaintiff maintained good standing throughout his tenure at Amelia, fulfilling all his obligations under the Employment Agreement from the start of his employment through its termination.

46. Despite Plaintiff's full performance of his contractual obligations and his achievement of all measurable, objective targets during his tenure, Defendants breached the Employment Agreement by failing to pay Plaintiff the entirety of his annual bonus for the year 2024, which remains outstanding and owed to Plaintiff.

47. As an alternative to the NYLL claim for failure to pay wages and unlawful deduction, Plaintiff is entitled to recover his outstanding bonus and commission, plus interest, under a breach of contract theory of relief, as a result of Defendants' actions.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (*in the alternative* - Quantum Meruit)

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. Defendants promised to pay Plaintiff certain compensation for the work Plaintiff provided with respect to his employment as set forth in the Employment Agreement and subsequent correspondence between Plaintiff and Defendants.

50. Plaintiff satisfactorily performed the work at Defendants' direction with the good-faith expectation of receiving the compensation promised to him as set forth herein and which is usual and customary and of reasonable value for the services rendered.

51. Defendants failed and refused to pay Plaintiff compensation, which was fair, reasonable, and customary.

52. Defendants' conduct is actionable based upon *quantum meruit* under New York law.

53. As a result of Defendants' willful conduct, Plaintiff is entitled to recover his outstanding bonus and commission, plus interest, under a theory of *quantum meruit*, as a result of Defendants' actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b. A judgment declaring that the practices complained of herein are unlawful and the acts of the Defendants are in violation of the aforementioned and applicable laws;

c. Granting an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

d. Punitive damages in an amount to be determined by a jury to punish Defendants for its grossly improper and unlawful conduct, and to deter Defendants from engaging in similar malicious, reckless and/or intentional conduct in the future;

e. Awarding Plaintiff Liquidated damages;

f. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

g. Pre-judgment and post-judgment interest, as provided by law; and

h. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: New York, New York
January 21, 2025

**JOSEPH & NORINSBERG, LLC**

_____
John J. Meehan, Esq.
*Attorneys for Plaintiff*
110 East 59th Street, Suite 2300
New York, New York 10022