# EXHIBIT A

August 31, 2023

Lance Berkowitz
Email: lberks@gmail.com

Dear Lance:

We are very pleased to offer you a position with Amelia US LLC, a Delaware limited liability company. This offer of employment is conditioned on your satisfactory completion of certain requirements, as more fully explained in this letter. Your employment is subject to the terms and conditions set forth in this letter.

You will be hired as a full-time Senior Vice President effective August 31, 2023, which will be your start date. You will report to Lanham Napier, President. You will be working in a hybrid environment, with expected attendance as needed in the New York office, otherwise remotely from your home, which is currently located at 380 Underwood Street, Holliston, MA 01746. You agree to devote your full business time, attention, and best efforts to the performance of your duties and to the furtherance of Amelia US LLC's interests.

In consideration of your services, you will be paid an annualized salary of $260,000 per year payable in accordance with the standard payroll practices of Amelia US LLC and subject to all withholdings and deductions as required by law. You will be eligible for an annual bonus with a bonus opportunity commensurate with those granted to other similarly situated employees of Amelia US LLC, tied to individual and company performance (the "Annual Bonus"). Details of the bonus plan are to be determined.

If this offer is accepted and you begin employment with Amelia US LLC, you will be eligible to participate in the company-wide benefit programs that are made available to other similarly situated employees of the Amelia US LLC, in accordance with and subject to the eligibility and other provisions of such plans and programs. In addition, your bar dues, privacy certification fees, and required continuing legal and privacy education will be reimbursed.

You will be subject to all applicable employment and other policies of Amelia US LLC.

Your employment will be at-will, meaning that you or Amelia US LLC may terminate the employment relationship at any time, with or without cause, and with or without notice.

This offer is contingent upon:

(a) Satisfactory completion of a background investigation, for which the required notice and consent forms are enclosed in a separate email.

(b) Your execution of Amelia US LLC's enclosed Employee Information and Obligations Agreement.

This offer will be withdrawn if any of the above conditions are not satisfied. Please do not resign from your current job until you have had confirmation from Amelia US LLC that these conditions have been satisfied.

By accepting this offer, you confirm that you are able to accept this job and carry out the work that it would involve without breaching any legal restrictions on your activities, such as restrictions imposed by a current or former employer. You also confirm that you will inform Amelia US LLC about any such restrictions and provide Amelia US LLC with as much information about them as possible, including any agreements between you and your current or former employer describing such restrictions on your activities. You further confirm that you will not remove or take any documents or proprietary data or materials of any kind, electronic or otherwise, with you from your current or former employer to Amelia US LLC without written authorization from your current or former employer, nor will you use or disclose any such confidential information during the course and scope of your employment with Amelia US LLC. If you have any questions about the ownership of particular documents or other information, discuss such questions with your former employer before removing or copying the documents or information.

All of us at Amelia US LLC are excited at the prospect of you joining our team. If you have any questions about the above details, please call me immediately. If you wish to accept this position, please sign below and return this letter agreement to me within seven (7) business days; otherwise, this offer will be deemed to be withdrawn.

I look forward to hearing from you.

Yours sincerely,

*Lanham Napier*
Lanham Napier (Aug 31, 2023 14:50 CDT)

Lanham Napier
President
AMELIA US, LLC

                                           **ACCEPTED AND AGREED:**

Lance Berkowitz

Signed: *Lance Berkowitz (Aug 31, 2023 15:04 EDT)*

Date: 08/31/2023

Amelia US LLC • 17 State St. 17th Floor, New York, NY 10004
Phone: 212-708-5500 • Fax: 917-206-6907

 

EMPLOYEE INFORMATION AND OBLIGATIONS AGREEMENT

This Employee Information and Obligations Agreement ("**Agreement**") is entered into by and between Amelia US LLC, a Delaware limited liability company, (the "**Employer**") on behalf of itself, its subsidiaries and other corporate affiliates (collectively referred to herein as the "**Employer Group**"), and Lance Berkowitz (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of August 31, 2023 the "**Effective Date**").

In consideration of the Employee's employment by the Employer, which the Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, the Employer and the Employee hereby agree as follows:

**1) Confidentiality and Security.**

a) Confidential Information.

   i) The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, secret and proprietary documents, materials, data and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses, as well as existing and prospective customers, suppliers, investors and other associated third parties ("**Confidential Information**"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee will cause irreparable harm to the Employer Group, for which remedies at law will not be adequate and may also cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

   ii) For purposes of this Agreement, Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, documents, research, operations, services, strategies, techniques, agreements, transactions, potential transactions, negotiations, pending negotiations, know- how, trade secrets, computer programs, computer software, applications, software design, work-in-process, databases, records, systems, material, supplier information, vendor information, financial information, accounting information, legal information, marketing information, pricing information, design information, personnel information, employee lists, vendor lists, reports, internal controls, security procedures, graphics, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, ideas, inventions, unpublished patent applications, original works of authorship,

[3]

discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, and other Confidential Information of the Employer Group, its businesses, or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer Group in confidence. The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

iii) The Employee understands and agrees that Confidential Information developed by him/her in the course of his/her employment by the Employer Group be subject to the terms and conditions of this Agreement as if the Employer Group furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public, provided that such disclosure to the public is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

b) <u>Disclosure and Use Restrictions.</u> The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any third party not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer and only after execution of a confidentiality agreement by the third party with whom Confidential Information will be shared or with the prior consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required or permitted by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall provide written notice of any such order to an authorized officer of the Employer Group within 48 hours of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Employer to contest the order or seek confidentiality protections, as determined in the Employer's sole discretion.

c) <u>Duration of Confidentiality Obligations.</u> The Employee understands and acknowledges that his/her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he/she begins employment by the Employer) and shall continue during and

[4]

after his/her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2) **Proprietary Rights.**

   a) <u>Definitions</u>. The following terms have the meanings specified in this Section 2:

      i) *"Intellectual Property Rights"* means all rights in and to US and foreign (i) patents, patent disclosures and inventions (whether patentable or not), (ii) trademarks, service marks, trade dress, trade names, logos, corporate names and domain names, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, (iii) copyrights and copyrightable works (including computer programs) and rights in data and databases, (iv) trade secrets, know-how and other confidential information, and (v) all other intellectual property rights, in each case whether registered or unregistered and including all registrations and applications for, and renewals or extensions of, such rights, and all similar or equivalent rights or forms of protection in any part of the world.

      ii) *"Pre-existing Intellectual Property Rights"* means all Intellectual Property Rights owned by the Employee or by the Employee jointly with any third parties, that were created or invented by the Employee prior to the period of his/her employment by the Employer and relate in any way to the business or contemplated business, products, activities, research or development of the Employer.

      iii) *"Work Product"* means all writings, works of authorship, technology, inventions, discoveries, processes, techniques, methods, ideas, concepts, research, proposals, materials and all other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by the Employee individually or jointly with others during the period of his/her employment by the Employer and relate in any way to the business or contemplated business, products, activities, research or development of the Employer or result from any work performed by the Employee for the Employer (in each case, regardless of when or where the work product is prepared or whose equipment or other resources is used in preparing the same), all rights and claims related to the foregoing, and all printed, physical and electronic copies and other tangible embodiments thereof.

   b) <u>Work Product</u>. The Employee acknowledges and agrees that all Work Product, as well as any and all Intellectual Property Rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof, shall be the sole and exclusive property of the Employer.

   c) <u>Pre-Existing Intellectual Property Rights</u>.

      i) The Employee has attached as Exhibit A to this Agreement a list describing with particularity any Pre-Existing Intellectual Property Rights, including, if applicable, titles and registration and application numbers. The Pre- existing Intellectual Property will be retained by the Employee and will not be owned by or assigned to the Employer under this Agreement. If no list is attached as Exhibit A, the Employee hereby represents and warrants that there are no Pre-existing Intellectual

[5]

    Property Rights. Employee shall not incorporate any Pre-existing Intellectual Property Rights or any Intellectual Property Rights that are owned by any third party, including any former employers, into any Work Product without obtaining the prior written consent of the Employer.

    ii) To the extent that the Employee incorporates any Pre-existing Intellectual Property Rights into any Work Product during the period of his/her employment by the Employer, the Employee hereby irrevocably grants to the Employer a royalty-free, fully paid-up, perpetual, transferable, worldwide non-exclusive license (with the right to sublicense) to make, have made, copy, modify, make derivative works of, use, offer to sell, sell, import and otherwise distribute such Pre-existing Intellectual Property Rights as part of or in connection with such Work Product, and to practice any method related thereto.

d) <u>Work Made for Hire; Assignment</u>. The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns to the Employer, for no additional consideration, the Employee's entire right, title and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Employer's rights, title or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Employer would have had in the absence of this Agreement.

    i) *Certain State Law Limitations on Assignment*. If Employee is based in California, Illinois, Delaware, Kansas, Minnesota, North Carolina, Utah, or Washington, any assignment of inventions agreement does not apply to an invention that Employee developed entirely on Employee's own time without using the Employer's equipment, supplies, facilities, or trade secret information, except for those inventions that either: (a) relate at the time of conception or use to the Employer's business or actual or demonstrably anticipated research or development, or

    (b) result from any work the Employee performs for the Employer (*cf. Cal. Lab. Code § 2870; Del. Code Ann. tit. 19, § 805; 765 Ill. Comp. Stat. 1060/2(1); Kan. Stat. Ann. § 44-130; Minn. Stat. § 181.78; N.C. Gen. Stat. Ann. § 66-57.1; Utah Code §§ 34-39-1 to 34-39-3; Wash. Rev. Code § 49.44.140*).

    ii) *Disclosure of Work Product; Maintenance of Records*. During his/her employment, the Employee shall promptly make written disclosures to the Employer of all Work Product, and shall at all times keep and maintain adequate, current, accurate and authentic records of all Work Product.

e) <u>Further Assurances; Power of Attorney</u>. During and after his/her employment, the Employee agrees to reasonably cooperate with the Employer (at the Employer's expense) to (i) apply for, obtain, perfect and transfer to the Employer the Work Product and Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) maintain, protect and enforce the same, including, without limitation, executing and delivering to the Employer any and all applications, oaths, declarations,

affidavits, waivers, assignments and other documents and instruments as shall be requested by the Employer. The Employee hereby irrevocably grants the Employer power of attorney to execute and deliver any such documents on the Employee's behalf in his/her name and to do all other lawfully permitted acts to transfer the Work Product to the Employer and further the transfer, issuance, prosecution and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Employee does not promptly cooperate with the Employer's request (without limiting the rights the Employer shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be effected by the Employee's subsequent incapacity.

f) <u>Moral Rights</u>. To the extent any copyrights are assigned under this Agreement, the Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims the Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" with respect to all Work Product and all Intellectual Property Rights therein.

g) <u>No License</u>. The Employee understands that this Agreement does not, and shall not be construed to, grant the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software or other tools made available to him/her by the Employer.

h) <u>Representations and Warranties</u>.

   i) *No Conflicts*. The Employee hereby represents and warrants that he/she is not subject to any obligation to others, including any former employers, that would be inconsistent with any provision of this Agreement, including with respect to any Pre-Existing Intellectual Property Rights, and that he/she has the right to grant the license in Section 2(c)(ii).

   ii) *No Infringement*. The Employee hereby represents and warrants that, to the Employee's knowledge, all Pre- Existing Intellectual Property licensed to the Employer pursuant to Section 2(c)(ii)does not infringe, misappropriate, dilute or otherwise violate any third party's Intellectual Property Rights or other rights; provided that the Employee shall not be liable for any infringement, misappropriation, dilution or other violations to the extent arising out of any instructions or materials supplied to the Employee by the Employer.

3) **Security**.

   a) <u>Security and Access</u>. The Employee agrees and covenants (i) to comply with all Employer Group security policies and procedures as in force from time to time including without limitation those regarding computer equipment, telephone systems, voicemail systems, facilities access, monitoring, key cards, Employer Group intranet, internet, social media and instant messaging systems, computer systems, e-mail systems, computer networks, document storage systems, software, data security, encryption, firewalls, passwords and any and all other Employer Group facilities, IT resources and communication technologies ("**Facilities Information Technology and Access Resources**"); (ii) not to access or use any Facilities and Information Technology Resources except as authorized by Employer; and (iii) not to access or use any Facilities and Information Technology Resources in any

[7]

manner after the termination of the Employee's employment by the Employer, whether termination is voluntary or involuntary. The Employee agrees to notify the Employer promptly in the event he/she learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction or reverse engineering of, or tampering with any Facilities and Information Technology Access Resources or other Employer Group property or materials by others.

b) <u>Exit Obligations</u>. Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall (a) provide or return to the Employer any and all Employer Group property, including keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, equipment, webcams, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, disks, thumb drives or other removable information storage devices, hard drives, and data and all Employer Group documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer Group or any of its business associates or created by the Employee in connection with his/her employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations and media in the Employee's possession or control.

4) **Restrictive Covenants.**

   a) <u>Non-Solicitation of Employees</u>**.** The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, or attempt to hire or recruit, any employee of the Employer Group or any employee who has been employed by the Employer Group in the twelve (12) months preceding the last day of Employee's employment (collectively, "Covered Employee"), or induce the termination of employment of any employee of the Employer Group for a period of twelve (12) months, beginning on the last day of the Employee's employment with the Employer Group. This non-solicitation provision explicitly covers all forms of oral, written, or electronic communication, including, but not limited to, communications by email, regular mail, express mail, telephone, fax, instant message, and social media, including, but not limited to, Facebook, LinkedIn, Instagram, and Twitter. However, it will not be deemed a violation of this Agreement if the Employee merely updates the Employee's LinkedIn profile or connects with a Covered Employee on Facebook or LinkedIn, without engaging in any other substantive communication, by social media or otherwise, that is prohibited by this section.

   b) <u>Non-Solicitation of Customers</u>**.** The Employee understands and acknowledges that because of the Employee's experience with and relationship to the Employer Group, the Employee will have access to and learn about much or all of the Employer Group's customer information and trade secrets, including, but not limited to, names, phone numbers, addresses, email addresses, order history, order preferences, chain of command, pricing information, and other information identifying facts and circumstances specific to the customer and relevant to sales and/or services. The Employee understands and acknowledges that loss of any such customer relationship and/or goodwill will cause

[8]

significant and irreparable harm to the Employer Group. The Employee agrees and covenants, for a period of twelve (12) months, beginning on the last day of the Employee's employment with the Employer Group, not to directly or indirectly solicit, contact, or attempt to solicit or contact, using any other form of oral, written, or electronic communication, including, but not limited to, email, regular mail, express mail, telephone, fax, instant message, or social media, including but not limited to Facebook, LinkedIn, Instagram or Twitter, or meet with the Employer Group's current, former, or prospective customers for purposes of offering or accepting goods or services directly competitive with those offered by the Employer Group. However, it will not be deemed a violation of this Agreement if the Employee merely updates the Employee's LinkedIn profile, or connects with a covered customer or former customer on Facebook or LinkedIn, without engaging in any other substantive communication, by social media or otherwise, that is prohibited by this section.

5) **Publicity**. Employee hereby consents to any and all uses and displays, by the Employer Group and its agents, of the Employee's name, voice, likeness, image, appearance and biographical information in, on or in connection with any pictures, photographs, audio and video recordings, digital images, websites, television programs and advertising, other advertising, sales and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes and all other printed and electronic forms and media throughout the world, at any time during or after the period of his/her employment by the Employer, for all legitimate business purposes of the Employer Group ("**Permitted Uses**"). Employee hereby forever releases the Employer Group and its directors, officers, employees and agents from any and all claims, actions, damages, losses, costs, expenses and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the period of his/her employment by the Employer, in connection with any Permitted Use.

6) **Non-disparagement**. The Employee agrees and covenants that he/she will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

7) **Acknowledgment**. The Employee acknowledges and agrees that the services to be rendered by him/her to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. The Employee further acknowledges that the amount of his/her compensation reflects, in part, his/her obligations and the Employer's rights under this Agreement; that he/she has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he/she will not be subject to undue hardship by reason of his/her full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. *Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the at-will status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.*

8) **Remedies**. In the event of a breach or threatened breach by the Employee of this Agreement, Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief. The Employee further acknowledges that each member of the Employer Group is an intended third-party beneficiary of this Agreement.

9) **Successors and Assigns.** The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns. The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

10) **Governing Law; Jurisdiction and Venue**. This Agreement shall be construed in accordance with the laws of New York without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the State of New York, County of New York. The Parties hereby irrevocably submit to the non-exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

11) **Modification and Waiver**. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by a duly authorized officer of the Employer (other than the Employee). No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

12) **Severability**. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or

unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

13) **No Waiver of Protected Rights**. This Agreement does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement, including but not limited to Employee's Section 7 rights under the National Labor Relations Act ("NLRA"), or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. The Employee shall promptly provide written notice of any such order to Director of Human Resources for Employer.

14) **Miscellaneous**. Captions and headings in this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

LANCE BERKOWITZ

Signature: *Lance Berkowitz (Aug 31, 2023 15:04 EDT)*

Print Name: Lance Berkowitz

AMELIA US, LLC

By: _____

Name: Lanham Napier

Title: President

[11]

# EXHIBIT A

## LIST OF PRE-EXISTING INTELLECTUAL PROPERTY RIGHTS

| Unregistered Intellectual Property | | |
|---|---|---|
| Title | Brief Description | Date of [Creation/ [or] Invention] |
| N/A | N/A | 08/31/2023 |
| | | |
| | | |

| Registered Intellectual Property | | | | |
|---|---|---|---|---|
| Jurisdiction | Name or Title | Status (Pending or Registered) | Registration or Application Serial Number | Registration or Application Date |
| N/A | N/A | N/A | | 08/31/2023 |
| | | | | |
| | | | | |

✓ No Pre-existing Intellectual Property Rights

___ Additional Sheets Attached

Signature of Employee: Lance Berkowitz (Aug 31, 2023 15:04 EDT)

Print Name of Employee: Lance Berkowitz

Date: 08/31/2023

# Amelia US Employment Agreement - Lance Berkowitz

Final Audit Report                                                                 2023-08-31

| | |
|---|---|
| Created: | 2023-08-31 |
| By: | Susan Ravens (susan.ravens@ipsoft.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAngaep6qf5Ytnk2kFFhpU4j1N4UcclLj9 |

## "Amelia US Employment Agreement - Lance Berkowitz" History

- Document created by Susan Ravens (susan.ravens@ipsoft.com)
  2023-08-31 - 6:36:19 PM GMT

- Document emailed to Lance Berkowitz (lberks@gmail.com) for signature
  2023-08-31 - 6:40:46 PM GMT

- Email viewed by Lance Berkowitz (lberks@gmail.com)
  2023-08-31 - 6:44:52 PM GMT

- Document e-signed by Lance Berkowitz (lberks@gmail.com)
  Signature Date: 2023-08-31 - 7:04:07 PM GMT - Time Source: server

- Document emailed to Lanham Napier (lanham.napier@amelia.com) for signature
  2023-08-31 - 7:04:10 PM GMT

- Email viewed by Lanham Napier (lanham.napier@amelia.com)
  2023-08-31 - 7:49:41 PM GMT

- Document e-signed by Lanham Napier (lanham.napier@amelia.com)
  Signature Date: 2023-08-31 - 7:50:08 PM GMT - Time Source: server

- Agreement completed.
  2023-08-31 - 7:50:08 PM GMT

Adobe Acrobat Sign